**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **CARL CONFORTO, SR.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 13-5852** |
| **CAROLYN W. COLVIN ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION** | **SECTION: "A" (4)** |

**REPORT AND RECOMMENDATION**

This is an action for judicial review of a final decision of the Commissioner of the Social Security Administration ("the Commissioner") pursuant to Title 42 U.S.C. § 405(g). The Commissioner denied Plaintiff, Carl Conforto's ("Conforto") request for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 423 and for Supplemental Security Income Benefits ("SSI") pursuant to Title XVI, 42 U.S.C. § 423.[1]

The matter was referred to the undersigned pursuant to Title 28 U.S.C. § 636(b), for the submission of Proposed Findings and Recommendations.

## I. Background

Conforto is a fifty-one-year-old, 240 pound, 5' 6" male,[2] with a high school diploma, two

[1]Rec. Doc. No. 2, at 1.

[2]Rec. Doc. No. 11-3, Tr. 83.

years of college education, and with past relevant work experience as a roofing contractor.[3]

Conforto filed for a period of disability and DIB under Title II on October 21, 2010, and protectively filed for SSI under Title XVI of the Social Security Act, on October 25, 2010.[4] All claims were initially denied on May 16, 2011.[5]

He alleges that he became disabled on January 1, 2007, due to severe low back pain, with right lower extremity radiculapathy and weakness in the low back and leg.[6] Conforto additionally alleges that he experiences problems with concentration and getting along with others, even though he does not allege that he has any mental condition.[7] His last date insured was December 31, 2012.

Conforto filed a written request for a hearing on May 24, 2011.[8] Christopher Juge, the Administrative Law Judge ("ALJ") held a hearing on December 9, 2011.[9] The ALJ denied Conforto's claims on January 25, 2012, finding that he was not disabled under the meaning of the Social Security Act.[10]

In his decision, the ALJ analyzed Conforto's claims pursuant to the five-step[11] evaluation

---

[3]Rec. Doc. No. 11-2, Tr. 34.

[4]*Id.* at Tr. 29.

[5]*Id.*

[6]Rec. Doc. No. 11-3, Tr. 83.

[7]*Id.* at Tr. 96.

[8]Rec. Doc. No. 11-4, Tr. 111.

[9]Rec. Doc. No. 11-2, Tr. 29.

[10]*Id.*

[11]To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. *Carey v. Apfel*, 230 F.3d 131, 134-35 (5th Cir. 2000); citing *Crowley v. Apfel*, 197 F.3d 194 (5th Cir. 1999).

First, the claimant must not be presently working at any substantial gainful activity. Id. Second, the claimant must have an impairment or combination of impairments that are severe. Id. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."

process used to determine whether a claimant is "disabled." Using this process, the ALJ found that he met the insured status requirements of the SSA through June 30, 2011, and that he did not engage in substantial gainful activity since September 21, 2007, the amended onset date.[12]

The ALJ further found that Conforto has a right sided ruptured disc at the L5-S1 level, which the ALJ concluded was a severe impairment.[13] The ALJ noted that Conforto alleged that he suffered with depression and personality disorder.[14] He found however that these conditions do not cause more than minimal limitation in his ability to perform basic mental work activities and are therefore non-severe.[15]

The ALJ noted that Conforto was not prescribed psychotrophic medications and he has not received any form of professional mental health treatment.[16] The ALJ further noted that the record contained no formal testing that resulted in a diagnosis of mental impairment. The ALJ noted that Conforto experienced no episodes of decompensation which have been of extended duration.[17]

The ALJ further held that Conforto has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1527 and 416.967.[18] The ALJ noted that Conforto was

---

Id., citing Crowley, 197 F.3d 194, 197-98. Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Id. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work that exists in the national economy, considering the claimant's residual functional capacity, age, education, and past work experience. *Id. See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).

[12]Rec. Doc. No. 11-2, Tr. 31.

[13]*Id.* at Tr. 32.

[14]*Id.*

[15]*Id.*

[16]*Id.*

[17]*Id.* at Tr. 33.

[18]*Id.*

47 years old , which is defined as a younger individual age 18-49 on the amended disability onset date and that Conforto subsequently changed age category to closely approaching advanced age.[19] The ALJ further found that the transferability of job skills is not material to the determination of disability because the Medical-Vocational Rules directly supported a finding of "not disabled."[20] The ALJ further found that considering Conforto's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform.[21]

On February 1, 2012, Conforto requested review of the hearing decision.[22] On May 21, 2013, the Appeals council denied Conforto's request for review.[23] On September 18, 2013, Conforto filed the subject complaint seeking review of the ALJ's decision.[24] Conforto seeks reversal of the ALJ's decision because (1) the ALJ erred when he found that Conforto was not disabled based on his alleged failure to follow prescribed medical treatment; (2) the ALJ's finding that Conforto's Impairments are not of listing level severity is not supported by substantial evidence; (3) the ALJ's finding that Conforto does not have a severe mental impairment is not supported by substantial evidence; and (4) the ALJ failed to properly evaluate the opinion of Conforto's treating physician.[25]

In opposition, the Commissioner contends that (1) the ALJ properly found that Conforto

---

[19]*Id.* at Tr. 37.

[20]*Id.*

[21]*Id.*

[22]*Id.* at Tr. 25.

[23]*Id.* at Tr. 9.

[24]Rec. Doc. No. 1.

[25]Rec. Doc. No. 19, at 3.

refused treatment and the finding is consistent with agency policy; (2) the ALJ properly analyzed plaintiff's impairments at Step Three regarding musculoskeletal disorders; (3) the ALJ's decision at Step Two that Conforto had a severe impairment right side ruptured disc at the L5-S1 level is supported by substantial evidence; and (4) the ALJ's evaluation of the treating physician Dr. Gilo Kawasaki's "check-box" form, which had no reference to specific progress notes in support of the limitations assessed, is supported by substantial evidence.[26]

## II. Standard of Review

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is limited to determining whether (1) the final decision is supported by substantial evidence, and (2) whether the Commissioner applied the proper legal standards when evaluating the evidence. *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). The Court may not re-weigh the evidence, try issues *de novo*, or substitute its judgment for that of the Commissioner. *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981). If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989). However, an ALJ's failure to apply the correct legal test constitutes a ground for reversal. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

Substantial evidence is more than a scintilla and less than a preponderance, and is considered relevant such that a reasonable mind might accept it as adequate to support a conclusion. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (citing *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993)). Substantial evidence must do more than create a suspicion of the existence of the fact to be established. A finding of no "substantial evidence" will only be found where there is a

[26]Rec. Doc. No. 20.

"conspicuous absence of credible choices" or "no contrary medical evidence." *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973). However, a single piece of evidence will not satisfy the substantiality test if the ALJ ignores, or fails to resolve, a conflict created by countervailing evidence. Evidence is not substantial if it is overwhelmed by other evidence, particularly evidence offered by treating physicians. *Franklin v. Soc. Sec. Admin.*, No. 12-2681, 2013 WL 5739078, at *2 (E.D. La. Oct. 22, 2013) (citing *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).

The ALJ must give controlling weight to the opinion of a treating physician if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Martiniez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (quoting 20 C.F.R. § 404.1527(d)(2)). However, "[t]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Id.* (quoting *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)) (internal quotation marks omitted). The relevant criteria to consider provides that the ALJ consider (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *See* 20 C.F. R § 404.1527. "Good cause for abandoning the treating physician rule includes 'disregarding statements [by the treating physician] that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by evidence.'" *Legett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995) (citing *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).

Where there is reliable medical evidence from a treating or examining physician

controverting the claimant's treating specialist, the ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under 20 CFR 404.1527 (2). *See Newton v. Apel*, 209 F.3rd 448 (5th Cir. 2000). Further, regardless of the opinions and diagnoses of medical sources, "the ALJ has sole responsibility for determining a claimant's disability status." *Martinez*, 64 F.3d at 176.

Finally, the Court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnosis and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [his] age, education, and work history." *Hendricks v. Apfel*, No. 99-1212, 2000 WL 174884, at *3 (E.D. La. Feb. 14, 2000) (quoting *Martinez*, 64 F.3d at 174).

The concept of disability is defined in the Social Security Act as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted . . . for a constructive period of not less than twelve months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). Section 423(d)(3) of the Act further defines "physical or mental impairment" as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 423(d)(3).

## III. Analysis

Conforto contends that the ALJ erred when he concluded that he was not disabled due to his alleged refusal to follow prescribed medical treatment without a justifiable reason for the failure to do so. Conforto contends that before the ALJ made the finding that his failure to follow prescribed treatment was not justifiable, the ALJ should have advised him of the potential finding and its impact. Specifically, Conforto contends that the ALJ erred in his finding that Conforto failed to follow prescribed medical treatment because (1) the treatment was never prescribed; (2) the ALJ relied on the testimony of a non-treating medical expert; (3) the record illustrates that Conforto had a justifiable reason for not undergoing surgery and why he did not have more than one epidural injection; and (4) the ALJ failed to comply with SSR 82-59 when he failed to advise Conforto of the consequences of his decision to refuse prescribed treatment on his claim for benefits.

In opposition, the Commissioner contends the ALJ presented alternate grounds to support his finding of not disabled and did not just make the decision based upon Conforto's failure to follow prescribed treatment.[27] The Commissioner contends that (1) the ALJ in fact relied on the medical records of the treating physician in rendering his analysis and so did the non-treating medical expert, Dr. Cloninger; (2) Conforto's reference to a fear of following the recommended treatment is insufficient pursuant to SSR 82-59 to negate a finding of failure to follow treatment; (3) the ALJ properly examined Conforto regarding the microdiscectomy and other issues which should be sufficient regarding the consequences of not following the treatment; and (4) the ALJ completed a five step sequential evaluation before finding Conforto was not disabled.[28]

---

[27]Rec. Doc. No. 20, p .7 .

[28]*Id.*

The record shows that the ALJ noted that Conforto argued that he had significant back limitations which prevented him from performing substantial gainful activity. He asserted further that Conforto's back problems are evidenced by a nerve conduction study that shows radiculopathy and a number of MRIs that show significant findings.[29]

The ALJ further noted Conforto's testimony that he was suppose to have surgery 20 years earlier but that the Veterans Administration had been "masking" his pain and treating him with pain medications which included Hydrocodone, Gabapentin, Ibuprofen, Morphine and Methocarbamol.[30]

The ALJ noted that Conforto saw a neurosurgeon who told him he needed surgery consisting of fusions, plates and screws but he refused the surgery because he would not improve.[31] The ALJ noted that Conforto became angry when he was questioned about his prior history pointing out that he has back issues which will not get better and then apologized because he was irritable from being in such pain.[32] The ALJ found that Conforto's allegations of extreme limitations are not supported by medical records.[33]

The ALJ also noted that the medical records from the Veterans Administration indicated that while Conforto complained of being desperate for treatment that would relieve his back pain, he repeatedly declined epidural steriod injections and surgical intervention that would alleviate his

---

[29]Rec. Doc. No. 11-2, Tr. 34.

[30]*Id.*

[31]*Id.*; *see also* Rec. Doc. No. 11-7, Tr. 199-240; Classification for Blood Pressures: <120 and <80 is Normal, 120-139 or 80-89 is Prehypertension, 140-159 or 90-99 is Stage I Hypertension, 160< or 100< is Stage II Hypertension. First number is top number (systolic) and Second number is bottom number (dialostic). *Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/high-blood-pressure/in-depth/blood-pressure/art-20050982*

[32]Rec. Doc. No. 11-2, Tr. 34.

[33]*Id.* at 35.

pain.[34] The ALJ noted that Conforto became verbally abusive when questioned about his refusal of medical treatment. The ALJ noted the disparity in Conforto's complaints of pain and wanting relief and his refusal for treatment recommendations on several occasions. The ALJ further noted that during the supplemental hearing held on December 9, 2011, Dr. Cloninger, a neurosurgeon, testified that at least 95 percent of the claimant's impairment was correctable with a very minor form of surgery, a level one laminectomy and microdiscetomy.[35] The ALJ further noted that within six weeks Conforto would be able to return to light exertional activity and within six months return to his work as a roofer.[36]

The ALJ noted that during the supplemental hearing Dr. Cloninger testified that he reviewed Conforto's medical records which indicate that he suffers with hypertension, new onset diabetes mellitus and low back pain.[37] The records further indicates that Conforto had four MRIs of his back which showed that he had a ruptured disc on the right side of his lower back at the L5-S1 level with S1 radiculopathy.[38] The ALJ noted that Conforto also had epidural steroid injections offered but refused them and instead agreed to take pain medication consisting of Vicodin and Tylenol.[39] The ALJ further noted that the ruptured disc at the L5-S1 level is a severe impairment. In contrast, he concluded that Conforto's hypertension and diabetes mellitus were of no clinical significance. The ALJ afforded great weight to the medical opinion of Dr. Cloninger noting that his opinion was well

---

[34]*Id.*

[35]*Id.* at 36.

[36]*Id.*

[37]*Id.* at 35.

[38]*Id.*

[39]*Id.*

supported by the objective evidence of record.

Relying upon Social Security Ruling 82-59, the ALJ concluded that in the instance in which the treatment is refused, without good reason, a finding of not disabled is warranted.[40] As a result, the ALJ found that Conforto is not disabled even though his severe impairment could reasonably be expected to cause the alleged symptoms. He further noted that Conforto's refusal to follow prescribed treatment renders his testimony about the severity and persistence of the limiting effects of these symptoms not credible.[41]

The record shows that on September 1, 2004, an MRI of Conforto's back was completed and showed the presence of a large disc herniation at the L4-5 level causing significant indentation of the ventral thecal sac greater on the left than the right.[42] On July 28, 2006, a comparison MRI was completed and showed that the condition of the L4-5 level remained unchanged but it was interpreted as a disc bulge that was less prominent in the central to left paracentral canal.[43]

The subsequent MRI also showed a mild chronic anterior wedging of the L1 greater than T12 that is chronic and associated with Schmorl's node defects at L1.[44] At the L5-S1 level there was an interval development of a right paracentral disc herniation superimposed on a broad disc bulge which displaced the right S1 nerve root posteriorly and laterally in the canal but does not impinge

---

[40]*Id.* at 36.

[41]*Id.*

[42]Rec. Doc. No. 11-7, Tr. 267.

[43]*Id.* at 268.

[44]An upward and downward protrusion (pushing into) of a spinal disk's soft tissue into the bony tissue of the adjacent vertebrae. Schmorl's nodes, which are common, especially with minor degeneration of the aging spine, are detectable via X-ray as spine abnormalities. Schmorl's nodes are most common in the middle and lower spine. Schmorl's nodes usually cause no symptoms, but they reflect that 'wear and tear' of the spine has occurred over time. Medicine Net.com, http://www.medicinenet.com/script/main/art.asp?articlekey=14007 (last visited Nov. 5, 2014).

on it. It was further noted that the thecal sac was being constrained moderately by epidural fat with mild to moderate right lateral recess stenosis.[45] Another MRI was completed on October 12, 2010 and revealed no change regarding the lower back.[46]

The records further show that on March 2, 2007, Conforto was seen at the Veterans Hospital and seen by nurse practitioner, Cathleen Baudy, who noted that his visit was for a surgical consult.[47] The notes also indicate that Conforto was seen by the clinic for 20 years for chronic low back pain and radicular bilateral leg pain. Upon examination, he was neurogically intact and his straight leg raising test was positive for 60 degrees bilaterally. It also noted that the MRI L4-L5 disc herniation and discogenic disc disease were at L5-S1. The notes indicate that Dr. Medgar recommended surgical intervention. It further indicated that Conforto stated that he did not wish to submit to surgery in Houston but requested placement on the Tulane waiting list for local surgical intervention in New Orleans.[48]

On July 14, 2009, Conforto returned to the VA for a Physical Medicine Rehabilitation Consult with Dr. Robert Mipro.[49] The medical notes indicate that he was seen in the clinic in April of 2009 and that private Neurosurgery wanted Conforto seen at a pain clinic because the neurosurgeon did not feel that surgical intervention was warranted.[50]

In November 2010, Conforto was seen again with complaints of low back pain. The

---

[45]Rec. Doc. No. 11-7, Tr. 269.

[46]*Id.*

[47]Rec. Doc. No. 11-8, Tr. 496.

[48]*Id.*

[49]*Id.* at 305.

[50]*Id.*

records note that he had been on narcotics for over 20 years, working as a roofer notwithstanding.[51] It was noted that he recently presented with a severe right sciatica on a S1 distribution. Dr. Melgar indicated that if Conforto did not get better in a few weeks, a microdiscectomy would be indicated and that Conforto agreed to proceed and follow the recommendation.[52]

On January 28, 2011 the medical notes referenced the presence of pain located in his right buttock which extended inferiorly on posterior aspect of his right thigh and leg. It was further noted that the pain was alleviated by an interim trial of Gabapentin. The notes indicate that Conforto was assessed during the interim by neurosurgery and it was noted that surgery would likely alleviate his symptoms even though he had a high risk for relapse of pain in the future.[53]

SSR82-59 provides that SSA may make a determination that an individual has failed to follow prescribed treatment only where all of the following conditions exist:

1. The evidence establishes that the individual's impairment precludes engaging in any substantial gainful activity (SGA) or, in the case of a disabled widow(er) that the impairment meets or equals the Listing of Impairments in Appendix 1 of Regulations No. 4, Subpart P; and
2. The impairment has lasted or is expected to last for 12 continuous months from onset of disability or is expected to result in death; and
3. Treatment which is clearly expected to restore capacity to engage in any SGA (or gainful activity, as appropriate) has been prescribed by a treating source; and
4. The evidence of record discloses that there has been refusal to follow prescribed treatment.

SSR 82-59, 1982 WL 31384 (Jan. 1, 1982). Furthermore, SSR82-59 provides that when "SSA makes a determination of 'failure,' a determination must also be made as to whether or not failure to follow

---

[51] *Id.* at 297.

[52] *Id.*

[53] *Id.* at 353.

prescribed treatment is justifiable." *Id.*

In this case, the only issue is whether substantial evidence supports the ALJ's conclusion that the record discloses a refusal by Conforto to follow prescribed treatment. The record shows that the consultive physician, Dr. Cloninger, testified during the supplemental hearing that there is no question that Conforto has a ruptured disc which was compressing the nerve root.[54] He further stated that it was not clear to him why after four years of pain he had not had surgery.[55] He further testified that he knew Conforto saw a neurosurgeon and that he refused a couple of epidural injections, but testified that his condition was correctable.[56] The doctor further stated that he found it difficult to understand why someone would go through what Conforto characterized as intractable back and right leg pain and not submit to surgery.[57] The doctor acknowledged, however, that he had not read every single page and could have missed a small notation in the records but that if Conforto had the surgery, he would be able to do anything he wanted within a six-week period since the procedure would be a laminectomy with discectomy.[58]

In contrast, the actual records indicate that there was no firm surgical recommendation made in the record because Conforto had responded well to pain medication, namely Gabapentin. As a result, it appears that surgery may have been discussed as an option for relief of his symptoms but also not a guarantee from a future relapse of pain. There is no evidence that Conforto outright refused surgery. The evidence does show that he only refused surgery in Houston but requested that

---

[54]Rec. Doc. No. 11-2, Tr. 77.

[55]*Id.*

[56]*Id.*

[57]*Id.* at 78.

[58]*Id.* at 79.

he be placed on the list in New Orleans. Once he returned to New Orleans, the treatment protocol changed and no longer include surgery but shifted to pain medication. Therefore, ALJ's conclusion that SSR 82-59 barred Conforto's ability to receive benefits is not based upon substantial evidence.

## IV. Recommendation

**IT IS RECOMMENDED** that the decision of the Administrative Law Judge denying Carl Conforto's Disability Insurance Benefits and Supplemental Security Income Benefits be **REVERSED AND REMANDED for consideration of all the evidence**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[59]

New Orleans, Louisiana, this 19th day of November, 2014.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

[59] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.